# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RAYMOND NESBITT,

    Plaintiff,

v.

TARRY WILLIAMS; NANCY POUNOVICH; GLADYSE C. TAYLOR, Acting Director of the Illinois Department of Corrections; SALEH OBAISI,

    Defendants.

No. 13 C 9241

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Raymond Nesbitt is an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center in Illinois. He alleges that IDOC staff and Stateville medical personnel discriminated against him on the basis of his disabilities in violation of the Americans with Disabilities Act and the Rehabilitation Act (Counts I & II), and were deliberately indifferent to his medical needs in violation of the Eighth Amendment (Count III). R. 19. Specifically, Nesbitt has sued Stateville's former Warden, Tarry Williams; former Stateville administrator Nancy Pounovich; former Acting Director of the IDOC, Gladyse Taylor; and Dr. Saleh Obaisi, and alleges that they are responsible for failing to provide Nesbitt with (1) a thicker mattress to alleviate his back and hip pain, and (2) special handcuffs that would have enabled him to visit medical specialists outside the prison without experiencing pain. *Id.* Defendants have moved to dismiss

for failure to a state claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 29; R. 33. For the following reasons, Defendants' motions are granted in part and denied in part.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

In June 2009, Nesbitt sustained back and right hip injuries while moving heavy boxes up a set of stairs at Stateville. R. 19 ¶ 10. Nesbitt alleges that he has suffered "excruciating pain in his lower back, right leg, right hip, and foot, as well as sciatica," ever since. *Id.* ¶ 11.

Nesbitt's primary claim is that Defendants have prevented him from traveling to receive prescribed medical services by refusing to accommodate his physical condition by using "medical restraint" handcuffs rather than "black box" hancuffs during transport. Nesbitt alleges that he refuses to travel wearing the black box restraints because they cause him "tremendous pain." *Id.* ¶ 14. According to the Seventh Circuit,

> "[t]he 'black box' is a hard plastic box placed over the lock apparatus that runs between the prisoner's handcuffs. The box does not cover the hands, but is situated between them. A chain runs through the box and encircles the prisoner's waist. The chain is tightened and then locked in back so that the prisoner's hand, restrained by handcuffs and the black box, are pulled against his stomach."

*Id.* ¶ 14 n.2 (quoting *Knox v. McGinnis*, 998 F.2d 1405, 1407 (7th Cir. 1993)). Stateville sometimes uses "medical restraints," as an alternative to "black box" restraints, *id.* ¶ 14, presumably because they accommodate certain physical conditions. In fact, Nesbitt was allowed to use medical restraints for trips in 2012 and 2013. *Id.* ¶ 18.

Nesbitt saw a doctor in 2012 who diagnosed him with arthritis. *Id.* ¶ 12. Nesbitt sought a second opinion through the prison grievance process. *Id.* While his

request was pending, Nesbitt slipped and fell on an icy sidewalk on March 23, 2015. *Id.* ¶ 17. After his fall, Nesbitt was taken to Stateville's healthcare unit for an examination. *Id.* ¶ 19. Defendant Dr. Saleh Obaisi examined Nesbitt and prescribed an x-ray. *Id.* Nesbitt told Dr. Obaisi he would not be able to travel to receive the x-ray without a prescription for "medical restraints." *Id.* ¶ 19. Despite Nesbitt's use of "medical restraints" in the past, Dr. Obaisi refused Nesbitt's request. *Id.* Nevertheless, Nesbitt eventually traveled to see a doctor at the University of Illinois in June 2015. *Id.* ¶ 13. It is not clear from Nesbitt's complaint whether this visit to the University of Illinois was in response to Dr. Obaisi's prescription for an x-ray or Nesbitt's grievance seeking a second opinion on his arthritis diagnosis. It is also not clear whether Nesbitt was provided with medical restraints or black box restraints for this trip. In any case, Nesbitt alleges that the doctor he saw at the University of Illinois in June 2015 prescribed hip replacement surgery. *Id.* ¶ 13. Nesbitt alleges that he has not received this treatment because he refuses to travel to appointments without medical restraints, which he alleges he continues to be denied.

In addition to the failure to provide medical restraints, Nesbitt also alleges that, "on several occasions in 2013," he requested a "thicker mattress to help cope with [his] pain." *Id.* ¶ 15. He alleges that defendant Nancy Pounovich reviewed his grievance request for the mattress. *Id.* Nesbitt alleges he received a notice that his request had been granted, but he never received the mattress. *Id.*

4

## Analysis

### I. ADA and Rehabilitation Act Claims

Title II of the ADA (which is at issue here) and the Rehabilitation Act are "functionally identical," such that courts often construe them as a single claim. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *see also Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("the analysis governing each statute is the same"). The Court will do so here as well.

#### A. Proper Defendants

As an initial matter, "[i]ndividual employees are not amenable to suit under the Rehabilitation Act or the ADA." *See Jaros*, 684 F.3d at 670 (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131). Therefore, all the ADA and Rehabilitation Act claims against Defendants in their individual capacities are dismissed with prejudice.

The warden of the facility where an incarcerated plaintiff is being held is the proper defendant for a claim seeking injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).[1] Thus, the Court substitutes the current Stateville warden, Randy Pfister, as the defendant for Nesbitt's ADA and Rehabilitation Act claims.

#### B. The Merits

To state a claim under the ADA, a plaintiff must allege that he is a "qualified individual with a disability," that he was "excluded from participation in or . . .

---

[1] Whether the Warden in his official capacity can be liable for damages for a claim under the ADA or the Rehabilitation Act is an issue for another day. *See Barrett v. Wallace*, 570 Fed. App'x 598, 600 (7th Cir. 2014).

5

denied the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was "by reason of" his disability. *See* 42 U.S.C. § 12132. "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

To the extent Nesbitt challenges the quality of the medical services he has received, such a claim is not cognizable under the ADA. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (explaining that "it would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the [ADA]"). As Nesbitt's desire for a softer mattress is a means to treat his medical condition, the Court also holds that the alleged failure to provide him with a softer mattress does not state a claim under the ADA.

Nesbitt, however, also claims that Defendants have refused to accommodate his access to prescribed medical services by denying his request that medical restraints be used instead of black box when he travels to receive prescribed medical services. This is not a claim about the quality of the medical services offered to Nesbitt, which as discussed is not cognizable under the ADA and the Rehabilitation Act. Rather, Nesbitt's claim concerns his means of access to medical services that a doctor has already determined he needs. The only question here

6

might be whether medical services are plausibly "services" for the purposes of the ADA, but the Supreme Court has held that they are. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) ("it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [an inmate's] disability-related needs in such fundamentals as mobility, hygiene, *medical care*, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'" (quoting 42 U.S.C. § 12132)) (emphasis added); see also *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-11 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

Defendants argue that Nesbitt's claim should not be cognizable under the ADA because he seeks a "medical device" which would "alleviate his pain." R. 37 at 5. This argument, however, misses the point that the pain Nesbitt seeks to avoid is not the everyday pain of his poor hip and back conditions. Rather, it is pain he suffers when he travels in order to access medical treatment. This is additional pain Defendants allegedly cause Nesbitt because they refuse to accommodate his physical condition by using medical restraints instead of black box restraints. Defendants make no argument as to why it might be reasonable for them to refuse Nesbitt the use of medical restraints. Such evidence might be revealed during discovery. Perhaps Defendants use the black box to address a security concern, but perhaps not. That concern may be reasonable, but it may not. In light of the alleged fact that Defendants previously provided Nesbitt with medical restraints, Nesbitt's

7

point is well taken that "[t]here is nothing 'reasonable,'"—at least at the pleading stage—"in requiring Nesbitt to make a Hobson's choice [to] accept one form of excruciating pain in order to receive treatment for another, or receive no treatment at all." R. 35 at 7. Therefore, Nesbitt has stated failure to accommodate claims under the ADA and the Rehabilitation Act.

## II. Deliberate Indifference Claim

### A. Medical Restraints

#### 1. Dr. Obaisi

Nesbitt also claims that the denial of medical restraints during travel to visit outside medical providers constitutes deliberate indifference to his medical needs. Nesbit alleges that he requested Dr. Obaisi prescribe that medical restraints be used when he traveled, and that the failure to provide medical restraints would result in Nesbitt refusing transport to obtain the medical treatment he needed. *See* R. 19 ¶¶ 19, 40-41. Since Nesbitt has plausibly alleged that Dr. Obaisi's failure to prescribe medical restraints caused him to go without medically necessary treatments, Nesbitt has stated a deliberate indifference claim against Dr. Obaisi.

#### 2. Warden Williams

With respect to Warden Williams, it is true that mere receipt of grievances from a prisoner is generally insufficient to establish that a prison warden was personally involved in any deficient medical care provided to the prisoner. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the

8

underlying conduct states no claim."); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Neely v. Randle*, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013) ("If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." (quoting *Gevas v. Mitchell*, 492 Fed. App'x 654, 660 (7th Cir. 2012))). However, written notice to prison administrators may form the basis of a deliberate indifference claim, if the plaintiff can "demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." *Arnett v. Webster,* 658 F.3d 742, 755 (7th Cir. 2011).

Here, Nesbitt's complaint is straightforward—he claims that black box restraints cause him such pain that he is willing to refuse transport for prescribed medical services, i.e., the black box causes him more pain than his hip for which a doctor has prescribed replacement. To the extent Nesbitt's grievance provided Warden Williams notice of these circumstances, that should have been a sufficient basis to cause Warden Williams to take some action. Thus, Nesbitt also had stated a deliberate indifference claim against Warden Williams.

### 3. Pounivich & Taylor

By contrast, Nesbitt does not allege that Pounovich or Taylor had personal knowledge of Nesbitt's request for medical restraints or his need to visit an outside medical provider. Thus, they cannot be liable for deliberate indifference under the

9

Eighth Amendment. See *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.").

## B. Softer Mattress

### 1. Taylor

Lastly, Nesbitt has failed to state a deliberate indifference claim based on the Defendants' failure to provide him with a softer mattress. As an initial matter, Nesbitt does not allege that Taylor had any personal knowledge of his circumstances. Thus, the deliberate indifference claims against Taylor based on the failure to provide a softer mattress is dismissed.

### 2. Dr. Obaisi

Nesbitt also does not allege that he asked Dr. Obaisi for a softer mattress. Unless Dr. Obaisi had personal knowledge of the softness of mattresses at Stateville (which Nesbitt does not allege), it is not plausible that Dr. Obaisi should have known that Nesbitt required a "softer" mattress to treat his pain absent a request from Nesbitt. And even if it is plausible to say that Dr. Obaisi should have considered prescribing a softer mattress for Nesbitt in light of his physical condition, his failure to do so does not rise to the level of an Eighth Amendment violation. *See Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (the "Constitution is not a medical code that mandates specific medical treatment."). The Court does not find it plausible that every "minimally competent medical professional" would have known to prescribe a softer mattress "under the circumstances at issue."

10

*McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("medical professionals . . . are entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under the circumstances at issue."). The Court will defer to Dr. Obaisi's medical judgment about the apparent need for a softer mattress and dismiss this claim against him.

### 3. Warden Williams & Pounovich

Lastly, to the extent Warden Williams and Pounovich had sufficient notice of Nesbitt's condition, they were entitled to rely on Dr. Obaisi's medical judgment. *See Arnett,* 658 F.3d at 755 ("Non-medical defendants . . . can rely on the expertise of medical personnel."). Thus, the deliberate indifference claims against them based on the failure to provide a softer mattress are dismissed.

**Conclusion**

For the foregoing reasons, Dr. Obaisi's motion, R. 29, is granted with respect to Counts I and II, and with respect to Count III pertaining to the softer mattress request. Counts I and II against Dr. Obaisi are dismissed with prejudice, and Count III against Dr. Obaisi pertaining to the softer mattress is dismissed without prejudice. Dr. Obaisi's motion is denied with respect to Count III pertaining to the medical restraints. Thus, Count III against Dr. Obaisi remains.

The IDOC defendants' motion, R. 33, is granted with respect to all the current individual defendants. Warden Williams, Pounovich, and Taylor are dismissed with prejudice at to Counts I & II, and without prejudice at to Count III. The motion is denied insofar as Stateville's current warden, Randy Pfister, in his

11

official capacity, is substituted as the defendant for Counts I and II. The Clerk is directed to make this substitution.

Additionally, defendant Ed Butkinewicz, who was named as a defendant in Nesbitt's original complaint, is dismissed because he is not named as a defendant in Nesbitt's amended complaint.

Should Nesbitt believe he can, consistent with Federal Rule of Civil Procedure 11, cure the deficiencies identified in this opinion, he may file a motion for leave to amend by April 21, 2017. The motion must attach a proposed amended complaint, and be supported by a brief of no more than five pages explaining how the proposed amendments address the Court's analysis in this opinion. A status is set for April 28, 2017, at which the parties should be prepared to discuss how they would like to proceed in general, including whether referral to a magistrate judge for settlement discussions would be helpful.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  March 21, 2017